**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**THEODORE E. LORIA,**

                           **Plaintiff,**

             v.                                    **5:09-CV-531**
                                                        **(FJS/ATB)**

**ROBERT BUTERA and KEVIN DALY,**

                           **Defendants.**
_____

**APPEARANCES**                                      **OF COUNSEL**

**BRESSLER & KUNZE**                      **MELVIN BRESSLER, ESQ.**
16 West Main Street
Suite 310
Rochester, New York 14614
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK STATE**      **SUSAN C. VON REUSNER, AAG**
**ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On May 5, 2009, Plaintiff, a former inmate of the New York State Department of Correctional Services ("DOCS"), brought this action under 42 U.S.C. § 1983, alleging that (1) Defendant Butera deprived him of due process by failing to provide him notice of his parole re-release hearing or affording him the right to counsel during the same, (2) Defendants conspired to deprive him of due process, and (3) Defendant Daly retaliated against him for filing a grievance against a facility psychologist. All of these allegations result from Plaintiff's

allegation that Defendant Butera, a facility parole officer, improperly rescinded his initial determination that Plaintiff, a parole violator, was suitable for a conditional parole re-release without first appearing for a Parole Board hearing.

Currently before the Court is Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

Plaintiff was convicted of Criminal Sale of a Controlled Substance in the third degree for which he received a minimum sentence of five years and an aggregate maximum sentence of ten years. On January 27, 2005, Plaintiff was released on parole. On January 17, 2007, Plaintiff's parole was revoked after a final parole revocation hearing at which the court imposed a ten-month delinquent time assessment, with an estimated expiration date of October 12, 2007.

On March 8, 2007, while at Fishkill Correctional Facility, Plaintiff received a Tier II Misbehavior Report and was found guilty of refusing a direct order. On May 11, 2007, while at Auburn Correctional Facility, Plaintiff received a second Tier II Misbehavior Report and was found guilty of causing property damage or loss.

On May 23, 2007, Defendant Butera, a facility parole officer, reviewed Plaintiff's parole status for re-release consideration based on the calculation of his earliest release date being October 12, 2007. At the time of this review, Defendant Butera knew that Plaintiff had two Tier II Misbehavior Reports and that he had declined to participate in the Transitional Services Programs while at the Fishkill facility. Based on this review, Defendant Butera decided that Plaintiff was eligible for re-release to parole as of October 12, 2007.

On June 20, 2007, the Office of Mental Health ("OMH") conducted a mental health evaluation of Plaintiff, and the Mental Status Report that OMH produced as a result of this examination "stated that Plaintiff would benefit from outpatient psychiatric treatment which would include verbal therapy and possible medication evaluation."

On July 2, 2007, OMH's psychologist issued Plaintiff a third Tier II Misbehavior Report, and Plaintiff was found guilty of refusing facility program treatment. On that same day, Plaintiff filed a grievance against the psychologist who had issued him the misbehavior report for providing him with inadequate mental health care.

On or about August 1, 2007, a Parole Board Release Decision Notice (form 9026) was sent to Plaintiff, indicating that Plaintiff's "earliest release date" would be October 12, 2007. On August 15, 2007, during Plaintiff's quarterly review with his corrections counselor, Defendant Daly, Plaintiff refused to participate in Transitional Services Programs Phases II and III and signed a refusal form to that effect.[1] Thereafter, Defendant Daly informed Defendant Butera of this refusal.

On August 16, 2007, Defendant Butera rescinded his decision that Plaintiff was suitable for parole re-release without prior Parole Board approval and scheduled Plaintiff for the next available Parole Board Release hearing, to be held on August 28, 2007. That same day, Plaintiff

---

[1] Plaintiff contends that, "[o]n March 8, 2007 while at Fishkill Correctional Facility, Plaintiff was advised by a correctional counselor that he was not required, as a parole violator, to participate in Transitional Services Programs, Phases II & III." *See* Complaint at ¶ 12. Further, he claims that he was not required to take these programs as a parole violator because he was already released on parole and because Phase II programs were not even available at the Auburn Correctional Facility. *See id.* at ¶¶ 33, 35. Moreover, he asserts that even if such programs were available, it would have only been available to "intermediate care program (I.C.P.) Level III inmates, who could attend programs in general population[,]" which he was not. *See id.* at ¶¶ 36-37.

rescinded his refusal to participate in Transitional Services Programs Phases II and III.  On August 28, 2007, at the Parole Board Release Hearing, the Parole Board denied Plaintiff re-release on conditional parole.  Plaintiff asserts that Defendant Butera intentionally covered-up Plaintiff's release date of October 12, 2007, on the form he sent to the Parole Board and failed to inform the Parole Board that Plaintiff was scheduled to be re-released on October 12, 2007.

## III. DISCUSSION

Defendants assert that the Court should dismiss Plaintiff's complaint because (1) Plaintiff has no liberty interest in parole re-release and, therefore, cannot state a claim under 42 U.S.C. § 1983 for denial of due process; (2) Plaintiff makes only conclusory allegations of retaliation, and Defendants have established legitimate, non-retaliatory reasons for their conduct; (3) Plaintiff fails to establish the elements of a conspiracy to violate his civil rights; and (4) Defendants are entitled to qualified immunity.

### A.    Rule 12(b)(6) standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the legal sufficiency of the non-movant's pleading.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering a pleading's legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that

are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

**B.     Plaintiff's Due Process claim**

Defendants assert that the Court should dismiss Plaintiff's first cause of action because Plaintiff has no liberty interest in parole re-release; and, therefore, he cannot state a claim under 42 U.S.C. § 1983 for denial of due process. Moreover, Defendants contend that, even if Plaintiff did have a protected liberty interest in parole re-release, based on the undisputed facts, they complied with all of the relevant regulations; and, therefore, Plaintiff's rights were not violated.

To state a sufficient claim under 42 U.S.C. § 1983 for denial of due process, a plaintiff must allege facts plausibly suggesting that he (1) possessed an actual liberty interest and (2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) (citation omitted).

More specifically, the first issue in this case is whether the plaintiff enjoys a protected liberty interest under New York's statutory parole scheme. *See Barna v. Travis*, No. CIV97CV1146, 1999 WL 305515, *1 (N.D.N.Y. Apr. 22, 1999) (citation omitted). Although the presence or absence of language in a state's parole provisions mandating release was once regarded as dispositive of this issue, *see Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11-13 (1979), the Supreme Court has more recently held that the focus of the inquiry should be on the nature of the interest that the state allegedly created, *see Sandin v. Conner*, 515

U.S. 472, 479-83 (1995).

The practical effect of this rule change is that, in cases involving due process challenges to parole hearings, "[i]n order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001) (citations omitted). "Neither the mere possibility of release . . . nor a statistical probability of release . . . gives rise to a legitimate expectation of release on parole[.]" *Id.* (internal citations omitted).  Rather, to the extent that a New York State inmate has any liberty interest in parole that the Due Process Clause of the Fourteenth Amendment protects, that interest exists only to the extent that the Parole Board cannot deny him release "arbitrarily" or "capriciously."  *See Romer v. Travis*, No. 03 Civ. 1670, 2003 WL 21744079, *6 (S.D.N.Y. July 29, 2003) (citation and footnote omitted); *see also Morehouse v. Alexander*, No. 9:08-CV-0946, 2008 WL 4822231, *5 (N.D.N.Y. Sept. 30, 2008) (citations omitted).

Here, Plaintiff alleges that Defendant Butera violated his due process rights by failing to provide him with prior notice of his parole re-release hearing on August 28, 2007, which, in turn, deprived him of the right to counsel and the right to prepare and present a defense. *See* Complaint at ¶¶ 72-73.[2]  Nowhere in the regulations discussing parole re-release is there a requirement to provide notice of a parole re-release hearing to the potential re-releasee. *See* N.Y.

---

[2] Plaintiff also contends that, "[i]f a Parole Board decides to hold a rescission hearing, the inmate must be served with a copy of the rescission report and a notice of the hearing and the charges to be considered." *See* Complaint at ¶ 84. Plaintiff continually and improperly refers to the August 28, 2007 hearing as a "rescission hearing," as opposed to a parole re-release hearing. If the August 28, 2007 hearing were a rescission hearing, Plaintiff would be correct that notice was required. In this case, however, the regulations do not require a rescission report because this was not a rescission hearing.

Comp. Codes R. & Regs. tit. 9, § 8002.6. The parole rescission procedures, on which Plaintiff relies, are inapplicable to this case. *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.5. A review of that regulation makes clear that the rescission process is relevant only when the Parole Board has decided to grant parole release and thereafter decides to rescind parole. *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.5(a) (noting that "situations may arise which would cause the **board** to reconsider **its decision** to grant parole release" (emphasis added)); *see also id.* at § 8002.5(b)(2)(i).

Section 8002.6 of title 9 of New York's Codes, Rules and Regulations governs Plaintiff's re-release to parole supervision upon the expiration of his time assessment. The Legislature amended this section in 2004 to permit an expedited process wherein a parole violator would simply be re-released upon the expiration of his time assessment without the Parole Board's involvement. Under this process, the facility parole office staff conducts an initial review to ascertain whether the parole violator may be re-released, or whether the inmate's case should be presented to the Parole Board for further review. *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.6(c)(1). If the facility parole office staff does not identify any of the criteria in that section that would require Parole Board consideration, the parole violator will be re-released upon the expiration of his time assessment. *See id.* If, on the other hand, the staff does identify any of the criteria, "the board of parole **will** consider the violator's re-release[.]" *See id.* (emphasis added).[3]

---

[3] The criteria requiring Parole Board consideration include, among others,

> (i) the parole violator has engaged in behavior, which constitutes a violation of facility rules or has been found guilty of having violated such rules;

(continued...)

Defendant Butera prepared a Parole Violator Reappearance Worksheet in May of 2007 to determine if Plaintiff would be eligible for parole in October of 2007, the date on which he would first become eligible for re-release. On this form, Defendant Butera determined that Plaintiff would be eligible for re-release on October 12, 2007. *See id.* At the time of this review, Plaintiff had two misbehavior reports. *See* Complaint at ¶¶ 14-15. On July 2, 2007, Plaintiff received a third misbehavior report for refusing mental health programming. *See id.* at ¶¶ 14-15, 26. Moreover, on August 15, 2007, during Plaintiff's quarterly review with his corrections counselor, Defendant Daly, Plaintiff refused to participate in Transitional Services Programs Phases II and III and signed a refusal form to that effect. *See id.* at ¶¶ 31, 38. On or about that same day, Defendant Daly told Defendant Butera about Plaintiff's refusal to participate in Transitional Services; and, on August 16, 2007, Defendant Butera rescinded his decision that Plaintiff was suitable for parole re-release without prior Parole Board approval.

Even assuming that Plaintiff is correct that Defendant Butera retaliated against him for filing a grievance by rescinding his initial approval of conditional re-release without requiring a Parole Board hearing, Plaintiff has failed to state a cause of action for violation of his due process rights. After Defendant Butera granted his initial approval of Plaintiff's re-release,

---

³(...continued)

\* \* \* \* \* \* \* \* \* \*

(iv) the board receives any information that supports a reasonable conclusion that the parole violator may not be suitable for re-release. Such information shall include, but not be limited to, information pertaining to self-destructive or threatening behavior by the parole violator.

*See* N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.6(c)(1)(i, iv).

Plaintiff was found guilty of violating facility rules. *See id.* at ¶¶ 14-15, 26. This violation, according to the regulations, required Defendant Butera to refer Plaintiff's case to the Parole Board for a re-release hearing. *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.6(c)(1)(i).

Moreover, contrary to Plaintiff's assertions, the Parole Board had not granted Plaintiff parole, requiring the prison officials to comply with section 8002.5 of the regulations. By its very wording, prison officials must only comply with section 8002.5 if the **Parole Board** has granted parole, not when a prisoner has been granted re-release pursuant to the expedited re-release procedures found in section 8002.6. *See, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.5(a), (b)(2)(i). No Parole Board interview had yet occurred; therefore, Defendant Butera was within his authority to rescind his initial approval without complying with the procedural requirements of section 8002.5. Further, the August 28, 2007 hearing was not a "rescission hearing;" and, therefore, Defendants were not required to "serve [him] with a copy of the rescission report and a notice of the hearing and the charges to be considered." *See* Complaint at ¶¶ 83-85. Plaintiff's argument hinges on the notion that he had been granted **parole**, as opposed to **conditional parole re-release**, and that, therefore, section 8002.5 of the regulations applies. As discussed, no "rescission" occurred, as that term is so defined; and Plaintiff was not entitled to the procedural safeguards afforded to rescission hearings. *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.5(a), (b)(2)(i). Accordingly, Defendants acted in accordance with the relevant regulations dealing with parole re-release; and, therefore, Defendants did not violate Plaintiff's rights by complying with the regulation mandating the actions that they took.[4]

---

[4] Furthermore, Plaintiff's argument hinges on the presumption that, once Defendant Butera granted him his initial approval for re-release, nearly five months before Plaintiff's
(continued...)

Further, even if Defendants had violated the regulations' procedural requirements, section 8002.6(c) does not create a liberty interest in conditional parole re-release because parole re-release, as with parole release, is subject to the Parole Board's discretion. *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 8002.6(f) (stating that "[t]his section shall not be construed to afford any parole violator a right to release from custody upon expiration of the time assessment, but only a right to consideration by the [Parole Board] as soon as practicable"); *see also* N.Y. Exec. Law § 259-i(3)(f)(x) (stating that, "[w]here a date has been fixed for the violator's re-release on presumptive release, parole or conditional release, as the case may be, the board or board member may waive the personal interview between a member or members of the board and the violator to determine the suitability for re-release; provided, however, that the board shall retain the authority to suspend the date fixed for re-release and to require a personal interview based on the violator's institutional record or on such other basis as is authorized by the rules and regulations of the board"). As such, because Plaintiff had no liberty interest in conditional parole re-release, any procedural infirmity did not give rise to a cognizable constitutional claim. *See Barna*, 239 F.3d at 171 (holding that the New York State parole process creates no legitimate expectation of release; and, therefore, an inmate seeking release is not afforded the full panoply of procedural due process protection); *see also Davis v. Dennison*, 219 Fed. Appx. 68, 70 (2d Cir. 2007) (citation omitted).

---

[4](...continued)
earliest possible re-release date, Defendant Butera was without authority to rescind that approval and recommend a full Parole Board hearing. Although the procedure for rescinding this initial approval is not set forth in the regulations, it is axiomatic that such authority must exist. If not, Plaintiff would have been free to violate the facility's rules at will, with Defendant Butera powerless to alter his initial recommendation.

Based on the foregoing, the Court dismisses with prejudice Plaintiff's claims that Defendants violated his due process rights.

### C.     Plaintiff's retaliation claim[5]

Plaintiff alleges that Defendant Daly retaliated against him by bringing the form on which Plaintiff acknowledged that he refused to participate in transitional programs to Defendant Butera, so that Defendant Butera would rescind his decision to release Plaintiff. *See* Complaint at ¶¶ 38-40. This alleged retaliation was in response to Plaintiff filing a grievance, more than a month prior, against a staff psychologist. *See id.* at ¶ 40.

To state a First Amendment retaliation claim, the plaintiff bears the burden of showing "'(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quotation and other citation omitted). "Adverse action," defined objectively, is "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Id.* at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) *superceded by* 320 F.3d 346, 2003 WL 360053 (2d Cir. Feb. 10, 2003)).

Since filing a prison grievance is a constitutionally protected activity, Plaintiff satisfies the first prong of this test. *See Davis*, 320 F.3d at 352-53 (citations omitted). Moreover, Plaintiff has sufficiently alleged that Defendants took adverse action against him in response to

---

[5] Plaintiff asserts his retaliation claim only against Defendant Daly. *See* Complaint at ¶¶ 123-24.

-11-

Plaintiff filing a grievance, thus satisfying the second and third prongs. He has alleged that Defendant Daly misrepresented that Plaintiff was required to take the transitional programs and that, using this misrepresentation as a pretext, Defendant Butera then rescinded his previous approval for parole re-release. Although such an elaborate plan seems very unlikely, such facts are sufficient to survive a motion to dismiss.[6]

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's third cause of action for retaliation against Defendant Daly.

### D.  Plaintiff's conspiracy claims pursuant to 42 U.S.C. §§ 1983 and 1985(3)[7]

To sustain a cause of action for conspiracy to violate a plaintiff's civil rights under section 1985(3), a plaintiff must allege and demonstrate that the defendants acted with racial or other class-based animus in conspiring to deprive the plaintiff of his equal protection of the laws, or of equal privileges and immunities secured by law. *See United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 834-39 (1983); *see also Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (citations omitted). A plaintiff asserting a claim under section 1985(3) need not necessarily offer proof of an explicit agreement; a conspiracy can be evidenced circumstantially, through a showing that the parties had a "'tacit understanding to carry out the prohibited conduct.'" *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir.

---

[6] Although Plaintiff may have alleged facts sufficient to survive a motion to dismiss, the Court has serious doubts about his ability to survive a motion for summary judgment.

[7] Plaintiff does not specify whether he is asserting a section 1983 or section 1985 conspiracy, or both. Although Defendants have assumed that he is alleging a section 1985 conspiracy, the Court has addressed both potential causes of actions.

1995) (quoting *United States v. Rubin*, 844 F.2d 979, 984 (2d Cir. 1988)) (other citations omitted). This notwithstanding, in order to properly plead such a claim, a plaintiff must make more than "conclusory, vague, or general allegations of conspiracy[.]" *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (citations omitted).

"'To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Benitez v. Ham*, No. 9:04-CV-1159, 2009 WL 3486379, *18 (N.D.N.Y. Oct. 21, 2009) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right. *See Malsh v. Austin,* 901 F. Supp. 757, 763 (S.D.N.Y. 1995). Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights. *See id.*

To withstand a motion to dismiss, the conspiracy claim must contain more than "'conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights[.]'" *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir. 1997) (quotation omitted); *Shabazz v. Pico,* 994 F. Supp. 460, 467 (S.D.N.Y. 1998) (holding that a mere allegation of conspiracy with no facts to support it cannot withstand a motion to dismiss). Specifically, the plaintiff must provide some factual basis supporting a "meeting of the minds," such as that the defendants "entered into an agreement, express or tacit, to achieve the unlawful end[;]" the plaintiff must also provide "some 'details of time and place and the alleged effects of the conspiracy.'" *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (quoting *Dwares* [*v. City of New York,* 985 F.2d 94,] 100 [(2d Cir.1993)]); *see also Hickey-McAllister v. British Airways*, 978 F. Supp. 133,

139 (E.D.N.Y. 1997) (holding that even though plaintiff alleged a conspiracy to present false testimony, she did not allege that defendants had any meeting of the minds (citing *San Filippo v. U.S. Trust Co. of N.Y.*, 737 F.2d 246, 256 (2d Cir. 1984)) (other citation and footnote omitted).

Plaintiff's complaint is wholly devoid of specifics in connection with his conspiracy claims, aside from the assertion, in purely conclusory terms, that Defendants conspired to violate his civil rights. *See* Complaint at ¶¶ 99, 103, 104. Moreover, Plaintiff's complaint lacks any allegation regarding race-based animus or his membership in a suspect class as motivation for the alleged conspiracy to violate his civil rights. Finally, as discussed above, Plaintiff has failed to establish that he had a constitutionally protected right in parole re-release. As such, because Plaintiff has failed to allege a violation of his constitutionally protected right, he cannot now claim a conspiracy to violate that right. *See Malsh*, 901 F. Supp. at 763.

Accordingly, the Court dismisses Plaintiff's second cause of action for conspiracy to violate his civil rights.

### E.     Qualified immunity

The doctrine of qualified immunity shields state officials from personal liability if their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations and footnote omitted).[8] When considering a qualified immunity defense on a motion to dismiss

---

[8] A defendant may assert a traditional qualified immunity defense on a Rule 12(b)(6) motion based on the facts appearing on the face of the complaint. *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). However, because the question of whether the official's conduct was reasonable "necessarily involves a fact-specific inquiry, '[i]t is generally premature to
(continued...)

under Rule 12(b)(6), "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

As previously set forth, Plaintiff has alleged facts that, if true, are sufficient to state a claim for retaliation against Defendant Daly. Since filing a grievance is a clearly established constitutional right, Defendant Daly is not entitled to qualified immunity at this stage.

Accordingly, the Court denies Defendants' motion to dismiss on this ground.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED** with respect to Plaintiff's due process claims against both Defendants and his conspiracy claims against both Defendants and is **DENIED** with respect to Plaintiff's retaliation claim against Defendant Daly; and the Court further

**ORDERS** that this action is remanded to Magistrate Judge Baxter for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: September 29, 2010
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[8](...continued)
address the defense of qualified immunity'" on a Rule 12(b)(6) motion. *Bernstein v. New York City*, No. 06 Civ. 895, 2007 WL 1573910, *9 (S.D.N.Y. May 24, 2007) (quotation and other citations omitted).

-15-