UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THEODORE E. LORIA,

                            **Plaintiff,**

                v.                          5:09-CV-531
                                                  (FJS/ATB)

**ROBERT BUTERA and KEVIN DALY,**

                            **Defendants.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **BRESSLER AND KUNZE LAW FIRM**<br>16 West Main Street<br>Suite 310<br>Rochester, New York 14614<br>Attorneys for Plaintiff | **MELVIN BRESSLER, ESQ.** |
| **OFFICE OF THE NEW YORK STATE<br>ATTORNEY GENERAL**<br>The Capitol<br>Albany, New York 12224<br>Attorneys for Defendants | **CHRISTOPHER W. HALL, AAG** |

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Currently before the Court is Defendant Kevin Daly's motion for summary judgment seeking to dismiss Plaintiff's 42 U.S.C. § 1983 claim, which survived a prior motion to dismiss. *See* Dkt. No. 48.

## II. BACKGROUND

A.    **Factual history**[1]

In 2000, Plaintiff received an indeterminate sentence of five to ten years for his conviction of the criminal sale of a controlled substance in the third degree. *See* Dkt. No. 1 at ¶¶ 6-7.[2] Plaintiff was paroled on January 27, 2005, but he violated his parole approximately eleven months later. *See id.* at ¶¶ 8-9. Following a parole revocation hearing on January 17, 2007, Plaintiff entered Fishkill Correctional Facility. *See id.* at ¶¶ 10, 12.

While incarcerated at Fishkill Correctional Facility, Plaintiff refused to participate in transitional services programs. *See id.* at ¶¶ 12-13. Plaintiff also received a Tier II Misbehavior Report and was found guilty of refusing a direct order. *See id.* at ¶ 14.

On April 6, 2007, Plaintiff was transferred to Auburn Correctional Facility. *See* Dkt. No. 48-1 at ¶ 4. On May 11, 2007, Plaintiff received a second Tier II Misbehavior Report and was found guilty of causing property damage or loss. *See id.* at ¶ 5.

On May 23, 2007, Defendant Butera, a parole officer at Auburn Correctional Facility, reviewed Plaintiff's parole status and calculated his automatic parole release date to be October 12, 2007. *See id.* at ¶ 6. Approximately two months later, Plaintiff received a Parole Board Release Decision Notice that memorialized his parole release date. *See id.* at ¶ 7.

On July 2, 2007, a psychologist in the Office of Mental Health ("OMH") issued Plaintiff a third Tier II Misbehavior Report; and he was found guilty of refusing facility program

---

[1] The Court has drawn the following facts from Plaintiff's complaint, *see* Dkt. No. 1, Defendants' answer, *see* Dkt. No. 28, and Defendant Daly's Statement of Material Facts, *see* Dkt. No. 48-1.

[2] To avoid confusion, the Court's citations to specific page numbers reference the page numbers that the Court's electronic filing system automatically generates.

treatment. *See id.* at ¶ 8. Later that day, Plaintiff filed a grievance against the OMH psychologist, alleging inadequate mental health care. *See id.* at ¶ 9.

On August 15, 2007, Defendant Daly, a corrections counselor at Auburn Correctional Facility, held a quarterly review meeting with Plaintiff. *See id.* at ¶ 10. Defendant Daly asked Plaintiff whether he had reconsidered participating in transitional services programs and allegedly told Plaintiff that his participation was required. *See id.* at ¶ 12. Plaintiff again refused to participate and signed a form to that effect.[3] *See id.* at ¶¶ 13-14. After the meeting, Defendant Daly sent a copy of Plaintiff's refusal form to the Parole Office at Auburn Correctional Facility per normal procedure. *See id.* at ¶¶ 15-16. The next day, however, Plaintiff notified Defendant Daly that he wanted to participate in transitional services programs. *See id.* at ¶¶ 21-22.

Even though Plaintiff ultimately accepted transitional services programs, the Parole Board received Plaintiff's refusal form from Defendant Daly. *See id.* at ¶25. As such, Defendant Butera reviewed Plaintiff's file and discovered that Plaintiff had received a third Tier II Misbehavior Report. *See id.* at ¶ 26. Defendant Butera, therefore, revoked Plaintiff's automatic parole release date of October 12, 2007, and referred Plaintiff's case to the Parole Board for a hearing. *See id.* at ¶¶ 28-29. Defendant Butera allegedly did not know that Plaintiff had accepted the transitional services programs when he revoked Plaintiff's parole release date. *See id.* at ¶ 33.

---

[3] Plaintiff contends that, "[o]n March 8, 2007 while at Fishkill Correctional Facility, Plaintiff was advised by a correctional counselor that he was not required, as a parole violator, to participate in Transitional Services Programs, Phases II & III." *See* Dkt. No. 1 at ¶ 12. Further, he claims that he was not required to participate in such programs because they were not available at Auburn Correctional Facility and he was a parole violator. *See id.* at ¶¶ 33, 35. He also asserts that, even if such programs were available, they were only available to "intermediate care program (I.C.P.) Level III inmates," which he was not. *See id.* at ¶¶ 36-37.

On August 28, 2007, the Parole Board held a hearing and revoked Plaintiff's October 12, 2007 release date. *See id.* at ¶¶ 35-37. The Parole Board also ordered Plaintiff to serve an additional ten months in prison. *See id.* at ¶ 37.

**B.     Procedural history**

On May 5, 2009, Plaintiff commenced this action under 42 U.S.C. § 1983, alleging that Defendants deprived him of his civil rights while he was incarcerated at Auburn Correctional Facility. *See* Dkt. No. 1 at ¶¶ 65-126. On September 29, 2010, the Court granted Defendants' motion to dismiss with respect to Plaintiff's due process and conspiracy claims but denied the motion with respect to Plaintiff's First Amendment retaliation claim against Defendant Daly. *See* Dkt. No. 27. Thereafter, on August 12, 2012, Defendant Daly filed the instant summary judgment motion, arguing that he did not take any adverse action against Plaintiff because he filed a grievance against the OMH psychologist in violation of his First Amendment rights. *See* Dkt. No. 48-6 at 3.[4]

### III. DISCUSSION

**A.     Standard of review**

A district court should grant summary judgment "if the pleadings, affidavits, and disclosures that form the record establish that 'there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Consol. Risk Servs. Inc., v. Auto.*

---

[4] On April 3, 2013, the Court held an attorney representation hearing at the request of Melvin Bressler, Esq., Plaintiff's attorney. Mr. Bressler requested that the Court remove him as the attorney of record due to disagreements with Plaintiff over whether Plaintiff should pursue legal action against Defendant Daly. Mr. Bressler, however, advised the Court that he believed Plaintiff had a viable claim against Defendant Daly. Thus, the Court instructed Mr. Bressler to continue representing Plaintiff and to respond to Defendant Daly's outstanding summary judgment motion.

*Dealers WC Self Ins. Trust*, No. 1:06-CV-871, 2010 U.S. Dist. LEXIS 68401, *9-*10 (N.D.N.Y. July 9, 2010) (quoting Fed. R. Civ. P. 56(c)(2)). Summary judgment, however, is not warranted "'if the evidence is such that a reasonable jury could return a verdict'" for the non-moving party. *Id.* (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008)). "In deciding a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor." *Id.* (citation omitted).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, then the non-moving party must identify "'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation and footnote omitted). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted); *see also Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (stating that "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact" (citation omitted)).

**B.    Local Rule 7.1(a)(3)**

As a preliminary matter, Local Rule 7.1(a)(3) of the Local Rules of Practice of the Northern District of New York requires a party moving for summary judgment to submit a statement of material facts with specific citations to the record where those facts are established. *See* N.D.N.Y. L.R. 7.1(a)(3) (2012); *cf. Youngblood v. Glasser*, No. 9:10-CV-1430, 2012 U.S.

Dist. LEXIS 131780, *11 (N.D.N.Y. Aug. 22, 2012) (noting Local Rule 7.1(a)(3)'s underlying purpose "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment" (citation and footnote omitted)). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issue arises. *See* N.D.N.Y. L.R. 7.1(a)(3). Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*; *see also Bombard v. GMC*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (stating that the Court's "Local Rules requirements are not empty formalities" (citations omitted)).

In this case, Defendant Daly provided a Statement of Material Facts replete with citations to the record, thereby satisfying Local Rule 7.1(a)(3). *See* Dkt. No. 48-1. Plaintiff, however, has failed to submit a statement of material facts that admits or denies Defendant Daly's factual assertions in mirroring numbered paragraphs. *See* Dkt. No. 53. Since Plaintiff has not specifically refuted Defendant Daly's Statement of Material Facts in accordance with Local Rule 7.1(a)(3), the Court accepts the factual assertions Defendant Daly has set forth in his Statement as true to the extent that the evidence in the record supports these facts. *See Aktas v. JMC Dev. Co.*, 877 F. Supp. 2d 1, 4-5 n.3 (N.D.N.Y. 2012) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1(a)(3) (citations omitted)); *Bombard*, 238 F. Supp. 2d at 467 (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions" (citations omitted)).

**C.      Plaintiff's First Amendment retaliation claim**

Retaliation claims derive from the First Amendment to the United States Constitution, as "[c]entral to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights." *Guillory v. Fischer*, No. 9:12-CV-00280, 2013 U.S. Dist. LEXIS 43981, *25-*26 (N.D.N.Y. Mar. 7, 2013) (citing *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004)).  Since prisoners can easily invoke retaliation claims, "courts should examine such claims 'with skepticism and particular care.'"  *Id.* at *26 (quotation and other citations committed); *see also O'Diah v. Cully*, No. 08-CV-941, 2013 U.S. Dist. LEXIS 66369, *28 (N.D.N.Y. Mar. 26, 2013) (stating that "[c]ourts must view retaliation claims with care and skepticism to avoid judicial intrusion into matters of prison administration. . . . Therefore, conclusory allegations alone are insufficient. . ." (citations omitted)).

"To state an actionable claim for retaliation under the First Amendment, a prisoner must establish by a preponderance of the evidence that: (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action."  *O'Diah*, 2013 U.S. Dist. LEXIS 66369, at *27 (citations omitted).  If the plaintiff satisfies his burden, the defendant may evade liability if it shows, by a preponderance of the evidence, that it would have taken the same action against the plaintiff "even in the absence of the protected conduct."  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

In this case, the first[5] and third[6] elements of Plaintiff's *prima facie* case are not much in dispute. The Court, therefore, must determine whether Plaintiff raises factual issues surrounding the alleged adverse action that Defendant Daly took against him (*i.e.*, filing Plaintiff's refusal form with the Parole Board).

In the prison context, "'[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. . . . 'Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection.'" *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (quotation and other citation omitted). To demonstrate an adverse action, a prisoner must present circumstantial evidence of a retaliatory motive[,] including "(1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline." *Guillory*, 2013 U.S. Dist. LEXIS 43981, at *27-*28 (citations omitted). Importantly, "'adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.'" *O'Diah*, 2013 U.S. Dist. LEXIS 66369, at *27 (quoting *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008)).

---

[5] Since "filing of a grievance against prison officials is constitutionally protected conduct[,]" Plaintiff satisfies the first element of his *prima facie* case. *Self v. Lavalley*, No. 9:10-CV-1463, 2012 U.S. Dist. LEXIS 187283, *19 (N.D.N.Y. Dec. 27, 2012).

[6] It is undisputed that approximately six weeks lapsed from when Plaintiff filed the grievance against the OMH psychologist and when Defendant Daly filed Plaintiff's refusal form with the Parole Office. *See* Dkt. No. 48-1 at ¶¶ 9, 15. This six-week period, therefore, "is sufficient to support an inference of a causal connection.'" *Self*, 2012 U.S. Dist. LEXIS 187283, at *20 (stating that "[t]he Second Circuit has held that the passage of 'only six months' between protected activity and an adverse action is sufficient to support an inference of a causal connection'" (quotation omitted)).

Based on the foregoing, the Court finds that Plaintiff offers nothing more than the conclusory allegation that Defendant Daly took an adverse action against him because he filed a grievance against the OMH psychologist. *See O'Diah*, 2013 U.S. Dist. LEXIS 66369, at *28 (noting that conclusory allegations of retaliation alone are insufficient to state an actionable First Amendment claim (citation omitted)). Plaintiff testified at his deposition that he only speculated as to whether Defendant Daly retaliated against him. *See* Dkt. No. 48-1 at ¶¶ 19-20. Plaintiff also fails to raise any facts to suggest animosity on Defendant Daly's part. *See generally* Dkt. No. 53. Additionally, Plaintiff cannot overcome the fact that Defendant Daly did not know that Plaintiff had filed a grievance against the OMH psychologist when he submitted Plaintiff's refusal form to the Parole Office. *See* Dkt. No. 48-1 at ¶¶ 38-40.

Even assuming that Plaintiff suffered an adverse action, he has not raised any factual issue to suggest that, had he not filed the grievance against the OMH psychologist, Defendant Daly would not have informed the Parole Office that Plaintiff refused to participate in transitional services programs. *See Mount Healthy*, 429 U.S. at 287. Indeed, Defendant Daly filed Plaintiff's refusal form with the Parole Office per normal procedures at Auburn Correctional Facility. *See* Dkt. No. 48-1 at ¶¶ 15-16. Further, contrary to Plaintiff's contention, Defendant Daly did not overstep his role as Plaintiff's mental health counselor and act as a disciplinarian when he filed Plaintiff's refusal form with the Parole Office. *See* Dkt. No. 53-1 at 4.

In particular, a review of the undisputed facts in the record shows that Defendant Daly interviewed Plaintiff on August 15, 2007, as part of a routine quarterly review. *See* Dkt. No. 48-1 at ¶ 10. In preparation, Defendant Daly reviewed Plaintiff's file and noted that he had refused transitional services programs at Fishkill Correctional Facility in March 2007. *See id.* at ¶ 11. Defendant Daly, therefore, asked Plaintiff to reconsider the transitional services programs. *See id.* at ¶ 12. When Plaintiff again refused such services, Defendant Daly had him sign a refusal

form. *See id.* at ¶¶ 13-14.  In accordance with Auburn Correctional Facility's policy, Defendant Daly sent Plaintiff's signed refusal form to the Parole Office.  *See id.* at ¶¶ 15-16.  When Defendant Butera received Plaintiff's refusal form, he reviewed Plaintiff's file and learned that the OMH psychologist had issued him a third Tier II Misbehavior Report.  *See id.* at ¶¶ 25-26.  Defendant Butera, therefore, voided Plaintiff's automatic parole on October 12, 2007, and referred his case to the Parole Board.  *See id.* at ¶¶ 28-30.  It was under such circumstances that the Parole Board conducted a hearing and ordered Plaintiff to remain incarcerated for an additional ten months.  *See id.*  Since Defendant Daly had a non-retaliatory reason for sending Plaintiff's refusal to the Parole Office, the Court dismisses Plaintiff's claim.  *See Mount Healthy*, 429 U.S. at 287.

Accordingly, the Court grants Defendant Daly's summary judgment motion because Plaintiff has failed to raise any material fact showing that Defendant Daly's alleged retaliatory action would tend to chill inmates' exercise of their constitutional rights.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Daly's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case.

**IT IS SO ORDERED.**

Dated: June 4, 2013
      Syracuse, New York

*/s/ Frederick J. Scullin*
Frederick J. Scullin, Jr.
Senior United States District Court Judge